# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO



Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, Ohio 44143

                    Plaintiff

-vs-

Wells Fargo Bank N. A. as Trustee
For Carrington Mortgage Loan Trust
420 Montgomery Street
San Francisco, CA 94104–1207

Carrington Mortgage Loan Trust
1600 S. Douglass Road Suite 110
Anaheim, CA 92806-5951

New Century Mortgage Corporation
18400 Von Karman Suite 1000
Irvine, CA 92612

New Century Liquidating Trust
Successor-in-interest to New
Century Mortgage Corporation
575 Anton Boulevard
Costa Mesa, CA 92626

Joanne Brown, Esq.
4070 Mayfield Road
Cleveland, Ohio 44121

                    Defendants.

)
) CASE NO.: **1: 23 CV 00164**
)
) JUDGE: **JUDGE BRENNAN**
)
) Magistrate: **MAG. JUDGE PARKER**
)
)
) **COMPLAINT FOR FRAUD**
) **SURROUNDING TRUTH IN LENDING**
) **PROVISION, RELIEF FROM JUDGEMENT,**
) **RESTITUTION, INJUNCTIVE RELIEF,**
) **FRAUD UPON THE COURT PER CIV. R.**
) **60(B), DECLARATORY JUDGEMENT,**
) **CIVIL PENALTIES AND PUNITIVE**
) **DAMAGES**
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**NOW COMES**, Virgil H. Collins, Pro Se Plaintiff, with COMPLAINT FOR FRAUD

SURRONDING TRUTH IN LENDING PROVISION, RELIEF FROM JUDGEMENT,

RESTITUTION, INJUNCTIVE RELIEF, FRAUD UPON THE COURT PER CIV. R. 60(B)

DECLARATORY JUDGEMENT, CIVIL PENALTIES, AND PUNITIVE DAMAGES pursuant

to *15 U.S.C. 1641(d), 15 USC 1639c(2), Fed, R. Civ. P. 59(b)*, *Fed. R. Civ. P. 60(B),* and for a rehearing or other relief as provided.

The Plaintiff contends that the Defendants have engaged in an elaborate foreclosure scheme designed to inflate mortgage property value to an unaffordable value for the consumer, and then use the court system to return the property to a fair market value by using the court's judicial foreclosure sale proceeding.

For the reasons set forth below, the Plaintiff contends that the Defendants engaged in an elaborate mortgage scheme which included Fraud up on the Court and the manipulation of his legal counsel to withhold evidence from the court that would have prevented summary judgment, and subsequently denying him due process in the Cuyahoga County Court of Common Pleas.

## JURISDICTION

This case is brought before this court concerning the property located at 4932 Nan Linn Drive, Richmond Heights, Ohio 44143, which just completed litigation in the Cuyahoga County Court of Common Pleas, Case No. CV 18 904354. The Plaintiff, as a U.S. citizen, brings this case pursuant to the federal question jurisdiction under *28 U.S.C. 1331,* and *15 U.S.C. 1641(d)*, and on claims of "Fraud" upon the court under *Fed. R. Civ. P. 60(b)*.

Respectfully Submitted,

_____

Virgil H. Collins
4932 Nan Linn Drive
Richmond Heights, Ohio 44143
Phone: (216) 410-4872
Email: virgilc@netlink.net
Pro Se Plaintiff

## STATEMENT OF FACT

### PLAINTIFF

1. The Plaintiff is the former home owner of 4932 Nan Linn Dr., Richmond Heights, Ohio
   44143, which is the subject of this complaint.  The Plaintiff is retired, and a former
   Principal Federal Aviation Administration (FAA) Great Lakes Region Inspector that was
   trained to investigate, and take enforcement actions against aviation fraud. As an FAA
   investigator, the Plaintiff has successfully obtained over 20 indictments in fraud cases
   which have resulted in arrest, and company closures, due to his enforcement actions. In
   2016, when the Plaintiff discovered that he was a victim of mortgage fraud, and after he
   had made $190,000.00 in payments, which was the inflated appraisal value of his
   property, he decided to use his property to do a public story on mortgage fraud, and
   determine if the actions by the Ohio court system had deterred the fraud activity that had
   caused the 2008 housing crises. He therefore, stopped paying on the interest on the
   property to force the property into foreclosure, so that he could confront original
   mortgagor, New Century Mortgage Corporation, who had been unavailable by
   concealment, since the signing of his mortgage contract, due them filing bankruptcy
   shortly after executing the Plaintiff's contract.

2. The Plaintiff have acted as a Pro Se Litigant in the following court proceedings during
   this journey through the Cuyahoga County Court System in his attempt to save his home:

   a. Motions and Pleadings in the Trial Court on Foreclosure Proceedings (Case #
      18-CV-904354)
   b. Notice of Appeal to 8th District Court of Appeal on Foreclosure Proceedings
   c. Motions and Pleadings in the Appeals Court on Foreclosure Proceedings
      (Case #CA 20 109555)
   d. Motions and Pleadings in the En Bonc and Reconsideration Court
   e. Appeal with Memorandum in the Ohio Supreme Court (Case #21-1296)

      f.   Writ of Prohibition on the Jurisdiction of the Trial Court Judge (Case #CA-21-110552)

      g.  Motions and Pleadings in the Trial Court on Sale and Confirmation of Sale

      h.  Notice of Removal in Trial Court of civil case removal to Federal Court

      i.   Application for Notice of Removal to the Federal Court (Case #1-22-CV-1821)

      j.   Motion and Pleadings in the Trial to Vacate Sale and Confirmation of Sale and for New Trial

      k.  Notice of Appeal to 8th District Court of Appeals on Sale and Confirmation of Sale Proceedings

      l.   Appeal in the 8th District Court of Appeals on Sale and Confirmation Proceedings. (Case #CA-22-112176)

      m.  Formal Complaint to Northern District of Ohio Federal Court

Therefore, the Plaintiff have tested every possible proceeding in this Judicial Foreclosure process, and have found that the Defendants have not been deterred in their mortgage fraud and predatory lending schemes, but have developed more subtle methods for passing mortgage fraud through the court system.

## DEFENDANTS

3. Defendant Wells Fargo (FARGO), is a "supplier" as the term is defined in R.C. 1345.01, who is in the business of hiring themselves out to other smaller mortgagors for their expertise in their litigation techniques for passing questionable mortgages through the court system. FARGO is no stranger to being sued for predatory lending and mortgage fraud in court systems around the country. They can now be considered the "fence" for getting fraudulent mortgages through the court system. On September 11, 2018, New Century Mortgage Corporation (NCMC) assigned FARGO as trustee over one of the mortgage notes on the property at 4932 Nan Linn Road in care of Carrington Mortgage Services (CMS) to execute a foreclosure. In 2007, shortly after NCMC signed a mortgage agreement with the Plaintiff, NCMC was sued by the Ohio Attorney General, in the Cuyahoga County Court of Common Pleas, for predatory lending and mortgage fraud.

4. Carrington Mortgage Loan Trust (CMLT) is a subsidiary of Carrington Mortgage Service (CMS), who at the relevant time of the Plaintiff's mortgage contract, was a licensed Mortgage Loan Trust that received and sold securities. On July 12, 2007, just before filing bankruptcy, NCMC transferred all servicing rights to CMS. On July 31, 2008, CMS was sued in the Columbus, Ohio Franklin County Court of Common Pleas by the Ohio Attorney General and the Ohio Department of Commerce for failure to modify mortgages initiated by NCMC as determined by the Cleveland, Ohio Cuyahoga County Court of Common Pleas.

5. Based on information and belief, and at some point in 2006, before filing bankruptcy, NCMC transferred one of the Plaintiff's mortgage notes, on the property, into the trust of CMLT as a Series 2006-NC3 Asset-Backed-Pass-Through Certificate, with Note being serviced by CMS.

6. Whenever any reference is made in this complaint to any act or practice of Defendant Carrington Mortgage Loan Trust (CMLT) it shall include Carrington Mortgage Services (CMS) (collectively "Defendants"), and such allegations shall be deemed to mean that the principals, officers, directors, employees, agents, and representatives of said Defendant did, or authorized, such or practices on behalf of said Defendant, while actively engaged in the scope of their duties.

7. Defendant New Century Mortgage Corporation (NCMC) had a Statutory Agent located at 1300 East 9th Street, Cleveland, Ohio 44114-0000 in 2006 when the Plaintiff purchased his home. That office was then closed after the Plaintiff's mortgage agreement, and NCMC's stator agent left the of Ohio, presumably, to escape the Lawsuit of the Ohio Attorney General.

8. The Ohio Attorney General opened an investigation, in the approximate time of August 2005, due to several hundred claims of mortgage fraud from consumers against NCMC. The Plaintiff contends that in June 2006, when he was signing the mortgage contract with NCMC, they were aware of the investigation of the Ohio Attorney General, and were attempting to collect as many property notes as possible, and store they away for collection at a later date, before they had to file for bankruptcy to avoid the consequences of the Attorney General's lawsuit. The collection of property notes would give them ownership of property titles that they could collect on while under the protection of bankruptcy. In NCMC's 1ST quarter of 2014 bankruptcy report, they reported having over $23 million in cash on hand in their final stages of their Chapter 11 bankruptcy. (Exhibit Q ) The Plaintiff contends that his property was one of those that was stored away for future collection, and that it was done through the falsification of his property value.  The Plaintiff further contends that from their Cleveland, Ohio office, NCMC employed a property appraiser, and a Broker to inflate the property value to a point that would prevent the Plaintiff from being able to sell, refinance, or get a mortgage loan modification due to the high mortgage property value, and placing the property too far underwater for the neighborhood, which prevent other creditors from refinancing the property.

9. Whenever any reference is made in this complaint to any act or practice of Defendant New Century Mortgage Corporation (NCMC) it shall include New Century Liquidating Trust (collectively "Defendants"), and such allegations shall be deemed to mean that the principals, officers, directors, employees, agents, and representatives of said Defendant did, or authorized, such or practices on behalf of said Defendant, while actively engaged

in the scope of their duties.

10. Defendant Joanne Brown was retained as counsel for the Plaintiff's foreclosure case on October 17, 2018. Attorney Brown was chosen through a referral by a client of the Cleveland Bar Association.  The Plaintiff asked Attorney Brown if she had the experience to handle a complex case such as his, and she assured him that she had the experience. However, based on information and belief, Attorney Brown shared pertinent information that he had provided to her, with the opposing counsel, who then manipulated Attorney Brown to grossly miss handled the Plaintiff's foreclosure case in order for them to achieve Summary Judgement, and prevent damaging information on NCMC from getting into the trial court record..

## COUNT I

### THE DEFENDANT IS ATTEMPTING TO EVICT PLAINTIFF FROM PROPERTY WHERE HE STILL HAS PART OWNERSHIP

11. On June 2, 2006, NCMC executed a mortgage contract through their Statutory Agent located in their Cleveland, Ohio office, who employed Broker Aby Bloch, and Property Appraiser Linda Warner. (Exhibit A item number 803) The appraiser was instructed, by NCMC's Agent, to give the property a $195,000.00 appraisal value when that property had a fair market value of just $140,000.00. NCMC used that inflated appraisal, and sold the property to the Plaintiff for $190,000.00, as the "Real Property Value" for the home. The mortgage was to be, what is referred to as a "Split Mortgage" in the real estate Industry.  A "Split Mortgage" is a mortgage where the creditor divides the real property value up into two notes, with separate terms of fixed and adjustable interest rates for each note. Normally, when the home owner takes out a loan on the property, such as a home

equity loan, it is considered a 2nd mortgage home equity loan. However, when the creditor creates a second mortgage note by dividing the property value into two notes, that's transaction is called a split mortgage, and both notes are considered primary notes because, together they represent the real property value. NCMC divided the inflated mortgage property value into a note for $152,000.00 (Note #1), and a note for $38,000.00 (Note #2) which equaled the reported $190,000.00 property value. (Exhibit A, pg. 1, Item 202 & 204)

12. On September 11, 2018, NCMC assigned Note #1 to FARGO for foreclosure, but kept Note #2 silent. (Exhibit B) On September 25, 2018, FARGO filed for foreclosure in the Cuyahoga Common Pleas Court on Note #1. Since the real property value included both Note #1 and Note #2, both notes had to be satisfied before the Property Title could be considered "free and clear" because both Notes are considered primary Notes for the "Real Property Value". Therefore, CMS was still billing the Plaintiff for Note #2 throughout the foreclosure process on Note #1. (Exhibit C)

13. Therefore, the Plaintiff contends that he is still the legal owner of property Note #2, which means that FARGO has no authority to authorize the foreclosure sale of the property that they knew or should have known, had no free and clear Title.

14. Plaintiff further contends that the Trial Court abused its discretion when it denied his Motion for a Quiet Title. Despite the fact that NCMC inflated and falsified the property value, the Plaintiff received a document that stated that Note #2 was "secured by a mortgage. (Exhibit D para. 5) Which is also supported by the Mortgage document. (Exhibit E)

15. Therefore, the Plaintiff is still the legal owner of part of the property at 4932 Nan Linn

Drive, and the court had no authority to authorize a Sheriff Sale without first insuring

that it had a clear Title. On December 29, 2020, the Plaintiff learned that the holder of

Note #2 is FARGO. (Exhibit K) FARGO has executed an eviction notice to the Plaintiff,

which is not legal because the Plaintiff is still part owner of the property, and because he

has never received an official notification that Note #2 was transferred to FARGO, and

FARGO has made no arrangements to cancel the debt. Without that debt cancelation,

FARGO cannot have a free and clear Title. The Plaintiff contends that the court should

Quiet the Title because the Judicial Foreclosure did not include Note #2, and the

Defendants misrepresented the Deed and the Mortgage's Real Property value of the

foreclosed property, which also means that FARGO had no "STANDING" to foreclose.

**COUNT II**

**MORTGAGE FRAUD**
**INFLATED APPRAISAL**

16. NCMC illegally inflated the Plaintiff's property value by falsely making the "Real

    Property" value $190,000.00, where the true market value was $140,000.00. (Exhibit A)

17. Just before the burst of the 2008 Housing Crisis, the Plaintiff was purchasing his home

    from one of the King Pins that helped caused the housing market collapse, New Century

    Mortgage Corporation (NCMC). Based on information and belief, NCMC was aware of

    an extensive investigation being conducted on their home mortgage operation by the

    Ohio Attorney General that approximately begin in 2005. When Plaintiff purchased his

    home in 2006, NCMC had an office located at 1300 East 9th Street, Cleveland, Ohio

    44114-0000, that was being operated by their Statutory Agent (AGENT). AGENT'S

    business associates were an appraiser name Linda Warner, and a Broker name Abby

    Bloch, who were assigned to the Plaintiff's mortgage application. Based on information

and belief, and after the Plaintiff showed interest in purchasing the home at 4932 Nan

Linn Drive, AGENT instructed the appraiser to inflate the property value from the

$140,000.00 fair market value to $195,000.00, and offer the property to the Plaintiff for

$190,000.00.

18. At the closing on the property, the property value was divided into two notes, in what is

known as a "Split Mortgage.  One note was for $152,000.00 (Note #1), and the other for

$38,000.00 (Note #2), and the Plaintiff was told that this was done so that he might

qualify for the government sponsored loan that he requested.

19. The Plaintiff was unaware that during that time NCMC was under investigation for

predatory lending and mortgage fraud by the Ohio Attorney General, and that NCMC

was in the process of collecting as many mortgage contracts as possible to store in a

home mortgage "Pipeline" before having to file bankruptcy to avoid prosecution.

20. The Ohio Attorney General discovered, during their investigation, that NCMC did not

have the resources to fund the loan applications that they were initiating, but would store

them away in their consumer "Pipeline" for future use.  The Ohio lawsuit ordered NCMC

to clear out that "Pipeline" and notify those home owners that they did not have the

funding to support the loans. (Exhibit G, pgs. 5, 7, & 9)

21. The Plaintiff contends that his home mortgage property transaction was probably one of

their last fraudulent transactions before the Ohio Attorney General filed a lawsuit against

them in March 2007, and NCMC's subsequent filing of bankruptcy.

22. The Plaintiff further contends that the first legitimate sign of mortgage fraud, is a "Split

Mortgage" because no Creditor would split a mortgage starting at the "Fair Market' value

of the property.

23. Based on information and belief, the Plaintiff contends that NCMC's fraudulent acts were

conducted for the following reasons:

   a. Gaining ownership of as many property notes as possible and placing them in a
      consumer mortgage "Pipeline" before filing bankruptcy. (Exhibit G)
   b. Their temporary conclusion of a system of targeting property owners with low
      income, but able to sustain payments long enough to make property available to them
      through foreclosure, and after their completion of a Chapter 11 Bankruptcy. (Exhibit
      G)
   c. Their temporary conclusion of misrepresenting loan terms and inflating home
      appraisals before filing bankruptcy. (Exhibit G)
   d. Their temporary conclusion of establishing impossible repayment terms for low-
      income consumers before filing for bankruptcy. (Exhibit G)
   e. Their temporary conclusion of inducing borrowers to sign for loans that NCMC knew
      or should have known that borrowers would be unable to repay before filing for
      bankruptcy. (Exhibit G)
   f. Their temporary conclusion of charging high interest rates on low-income families
      before filing for bankruptcy. (Exhibit G)
   g. Their temporary conclusion of locking borrowers in unaffordable loans that include
      equity stripping features such inflated home appraisals which allowed NCMC to
      deceive secondary market purchasers and allows them to extract more profits for
      themselves during their period of Chapter 11 Bankruptcy. (Exhibit G)
   h. Provide themselves with a way to return illegal inflated property values back to "fair
      market" value be using the court's Judicial foreclosure property appraisal process.

24. The Plaintiff contends that to conceal their "High-Cost Mortgage" fraud scheme long

enough to prevent the Plaintiff from discovering it before NCMC filed bankruptcy,

NCMC's AGENT falsified documents established for Truth in Lending disclosures, by

placing an erroneous reference for the Cleveland Ohio High-Cost Mortgage 30-year

Wholesale Worksheet, to conceal the high interest rate charged on the loan.

The AGENT put the reference for the definition for High-Cost mortgage as

"Cleveland, Ohio City Ordinance 737-02. (Exhibit H, pgs. 1, 2) When the correct

reference is Ohio Revised Code Section 1349.25. (Exhibit H, pg. 3)

25. That Ohio Revise Code provides that the interest rate for mortgages less than $50,000.00,

cannot be for more than 8.5%, and NCMC was making the Plaintiff obligated to a 30-

year $38,000.00 mortgage note at a fixed rate of 10.487%, which was contrary to law. (Exhibit P)

26. Based on information and belief, NCMC anticipating that the Plaintiff would not discover the true Ohio Revise Code to request to rescind the mortgage agreement before they were under bankruptcy protection.

27. The Plaintiff contend that NCMC violated *15 USC 1602(aa)* when they initiated a high interest rate mortgage, and then concealed their actions by falsifying the Truth in Lending documents.

28. The Plaintiff further contends that NCMC violated *15 USC 1639(c)(2)* when they inflated the appraisal of the property, and then split the mortgage into two separate notes.

**COUNT III**

**NEW CENTURY MORTGAGE CORPORATION
CONCEALED LOCATION TO AVOID LITIGATION
WHICH WARRANTS EQUITABLE TOLLING**

29. The Plaintiff contends that NCMC purposefully absconded and concealed their location which denied the Plaintiff his right of recission before the 3-year statute of limitation, his ability to file claims of fraud before its 4-year statute of limitation, and claims of fraud related to Truth In Lending, before its 3-year statute of limitation.

30. The Plaintiff further contends that his mortgage transaction with NCMC was probably one of the last, if not the last mortgage transactions that they initiated before the Ohio Attorney General filed lawsuit, and NCMC filing bankruptcy.

31. On June 2, 2006, the plaintiff entered into a mortgage agreement with NCMC. On March 14, 2007, the Ohio Attorney General filed their lawsuit against NCMC, and on April 2, 2007, NCMC filed for Chapter 11 Bankruptcy, and on July 12, 2007, NCMC

notified the Plaintiff the they were assigning the servicing rights of his mortgage to CMS. (Exhibit I)

32. On March 26, 2008, an unsealed report by bankruptcy court examiner Michael J. Missal outlined a number of significant improper and imprudent practices related to its loan originations, operations, accounting and financial reporting processes, and accused auditor KPMG with helping the NCMC conceal the problems during 2005 and 2006. (Exhibit J, pg. 4)

33. In September 2007, after NCMC had transferred serving rights to CMS in July 2007, the Plaintiff contacted CMS concerning the errors he found in his mortgage agreement, and asked for information on how to contact NCMC. CMS advised the Plaintiff that they were just the servicer, and had no information on NCMC. Again, in February 2008, the Plaintiff contacted CMS and asked for information on NCMC to resolve mortgage issues, and he was again denied information. In March 2008, the Plaintiff contacted CMS and indicated to them that if he did not receive information on NCMC, then he wanted to terminated his mortgage agreement. CMS said that they would get back with me but never did. The Plaintiff attempted to find out if NCMC still owned his property, but no one would say until he followed up in April 2008, and CMS told him that his property was owned by FARGO but they gave him no address for FARGO.

34. On May 9, 2008, the Plaintiff sent a Hardship Letter to CMS hoping to get assistance. (Exhibit L) On June 19, 2008, CMS declined Plaintiff's request for assistance. (Exhibit M) The Plaintiff was never told that there was a statute of limitations for terminating a mortgage agreement, so, out of desperation, and after nine more years of threating to cancel the mortgage, the Plaintiff decided to pay the inflated price of $190,000.00 that

NCMC had put on the property, but refuse to pay the interest until he could meet with NCMC. Therefore, in November 2017, and after the Plaintiff had reached a total in payments of $193,000.00, he stopped all payments to force the property into foreclosure, and a opportunity to confront NCMC. (Exhibit N)

35. However, he then discovered that the information that he had received from CMS, that FARGO owned the note to his property, was false because on September 11, 2018, NCMC assigned the mortgage Note #2 to FARGO. (Exhibit O)

36. After filing their foreclosure complaint, FARGO made NCMC, and their associates, NCMC and CMS CO-Defendants in the foreclosure proceedings. The Plaintiff thought that [at] last, he would get the opportunity to confront NCMC concerning his mortgage. Since the beginning of these foreclosure proceedings until the present, NCMC has concealed its location from the court. Between the Appeals Court and the Trial Court, there have been 41 notifications sent out, by the court, to the court registered addresses of NCMC, and 41 notifications have been returned citing "undeliverable" and "unable to forward".

37. Therefore, the Plaintiff request this court to provide provisions for Equitable Tolling per Ohio Revised Code 2305, due to NCMC persistent concealment to avoid exposure to prosecution.

**COUNT IV**

**FARGO MISREPRESENTED THE REAL PROPERTY VALUE
IN THE FORECLOSURE AND SUPPORTED THE
INFLATED PROPERTY VALUE OF THE MORTGAGE VALUE FOR GAIN**

38. On September 11, 2018, NCMC assigned mortgage property Note #2, of 4932 Nan Linn Drive, to FARGO. (Exhibit P) FARGO brought that assignment to the Cuyahoga County

Court of Common Pleas for foreclosure on September 25, 2018. A Statutory Agent of NCMC had previously illegally inflated the property value to $190,000.00, and then split that "Real Property" value into two notes. Note #1 was for $152,000.00, and Note #2 was for $38,000.00. FARGO brought Note #1 to the court for foreclosure. The Plaintiff never received any notification that Note #2 was also assigned to FARGO until he made a written request to CMS as to who was the owner of Note #2, and they informed him that FARGO was also the owner of Note #2. (Exhibit K) The Plaintiff had never received any notification of the assignment of Note #2 to FARGO, as required by *15 U.S.C. 1641(g)*.

39. The Plaintiff contends that FARGO became well aware of the mortgage fraud scheme when they were given the assignment of two notes that represented the "Real Property Value" of the property at 4932 Nan Linn Drive, and should know, or should have known that [that] value was well above the 'Fair Market Value" of the properties in that area, which would indicate that the property appraisal was falsified.

40. The Plaintiff contends, that [that] indicates that FARGO knew, and was complicit in the mortgage scheme to utilize the Judicial Foreclosure system of selling foreclosed property to return the property at 4932 Nan Linn Drive to the original fair market value with a "free and clear" Title..

41. The Plaintiff further contends that while FARGO may be authorized to foreclose on Note #1, they, where not authorized to foreclose on Note #2, in parallel, and because Note #2 had not gone through the foreclosure process, as part of the "Real Property" value, the Plaintiff is still the legal owner of Note #2, until a process for that note is completed.

42. FARGO has issued an eviction notice for the Plaintiff, and the Plaintiff is requesting an Injunction on that eviction notice because he is still part owner of that property.

## COUNT V

## CARRINGTON MORTGAGE TRUST IS
## COMPLICIT IN A FRAUDULENT MORTGAGE NOTE SCHEME

**43.** Carrington Mortgage Loan Trust (CMLT) is a subsidiary of Carrington Mortgage Service (CMS), who at the relevant time of the Plaintiff's mortgage contract, was a licensed Mortgage Loan Trust that received and sold securities. On July 12, 2007, just before filing bankruptcy, NCMC transferred all servicing rights to CMS. On July 31, 2008, CMS was sued in the Columbus, Ohio Franklin County Court of Common Pleas by the Ohio Attorney General and the Ohio Department of Commerce for failure to modify mortgages initiated by NCMC as determined by the Cleveland, Ohio Cuyahoga County Court of Common Pleas, and as a result of mortgage fraud and predatory lawsuit filed by the State of Ohio. (Exhibit G)

**44.** Based on information and belief, and at some point, in 2006, and before filing bankruptcy, NCMC transferred the Plaintiff's property Note #2, into the trust of CMLT as a Series 2006-NC3 Asset-Backed-Pass-Through Certificate, with Note #2 being serviced by CMS.

45. In 2006, NCMC inflated the "Real Property" value of the property at 4932 Nan Linn Drive to $190,000.00, and sold the property to the Plaintiff. NCMC then divided the property value into two mortgage notes, one note for $152,000.00 (Note #1), and another note for $38,000.00 (Note #2). Both notes together equaled the inflated "Real Property" value of $190,000.00.

46. Based on information and belief, NCMC put both notes into CMLT to be sold in the securities exchange, but only Note #1 was submitted for foreclosure. However, the

Plaintiff contends that because the "Real Property" value was falsely inflated, Note #2 had no value, and was issued for property that did not exist. NCMC issued a Mortgage Note document stating that Note #2 was a note secured by a mortgage which is false. (Exhibit D para. 5) and (Exhibit E) Therefore, if Note #2 has been sold in the securities market, it is an illegal asset, because it has no value, and was for property that does not exist.

47. The Plaintiff contends that the only purpose for Note #2 was to place a financial burden on him to insure a future foreclosure. CMLT and CMS have been collecting payments, or attempting to collect payments from the Plaintiff, for a Note on property that never existed. (Exhibit C) That act is prohibited by *15 U.S.C. 1692e.*

48. The Plaintiff contends that the Defendants violated the Home Owners Equity Protection Act (HOEPA) per *15 U.S.C. 1639,* when he was scheduled to pay 30 years, at a 10.487% interest rate, on a note for property that never existed. (Exhibit P)

**COUNT VI**

**<u>AN OFFICER OF THE COURT COMMITED
FRAUD UPON THE TRIAL COURT CASE #CV-18-904354
THAT CAUSED SUMMARY JUDGEMENT</u>**

49. Defendant Joanne Brown (Brown) was retained as counsel for the Plaintiff's foreclosure case on October 17, 2018. Attorney Brown was chosen through a referral by a client of the Cleveland Bar Association. The Plaintiff asked Attorney Brown if she had the experience to handle a complex case such as his, and she assured him that she had the experience. However, Attorney Brown grossly miss handled the Plaintiff's case in a way that only benefited the Defendants, and caused injury to the Plaintiff.

50. When the Plaintiff retained Brown for counsel, he provided her with a 24-page document

plus, several exhibits with information that he had gathered for his case.  He asked her to use that information to file his answer to the initial complaint, and for filing his complaints and counterclaims. Brown told him that she would submit the information after she reviewed it.  NCMC's foreclosure complaint was filed in the Trial Court on September 25, 2018, and the answer was due October 30, 2018.  The Plaintiff retained Brown on October 17, 2018, where he provided her with all his pertinent information.

51. The Plaintiff, also at that time, provided Brown with information and the case number of the Ohio Attorney General's mortgage fraud and predatory lending lawsuit that they had filed on NCMC.  The Plaintiff asked her if she could get a copy of that case's file for our reference as to what the Ohio Attorney General found on NCMC, and she said that she would. She then obtained a 600-page copy of the case history from the court. However, when Plaintiff asked her for a copy of the report, she only emailed the Plaintiff a copy of the original complaint that he had originally given to her. Brown was asked several times for a copy of that report, and Brown continually avoided the request, which gave the Plaintiff the impression that she no longer had a copy of that case.

52. Brown missed the deadline for filing Plaintiff's answer to the complaint, and instead requested the court to allow her to file an answer instanter. Brown requested leave to file an answer on November 7, 2018, and the Judge granted the motion on December 22, 2018, which gave Brown an additional 29 days to file his answer to the complaint. Brown then informed the Plaintiff that she would file an amended answer at a later date that would include his information that he provided to her. The Plaintiff went to Brown's office several times a week asking her when she was going to file his answer, complaint, and counterclaims, and Brown continually assured the Plaintiff that she would file his

information, but never did.

53. Brown would repeatedly ask the court for extensions to file the Plaintiff's amended answer to the complaint, and his complaints and counterclaims, but she would continually miss the deadlines, until the court finally said that there would be no more extensions.

54. On January 15, 2019, NCMC's counsel motioned for Summary Judgement, and the response was due on February 14, 2019. However, for some unknown reason, the court ordered that NCMC's Motion for Summary Judgement was to be held in abeyance, and that the Plaintiff was not to respond to that motion until after May 24, 2019, which was a 5 (five) month period where the Plaintiff could not respond to NCMC's Motion for Summary.

55. Based on information and belief, the Plaintiff contends that Brown shared the information that he had given her on NCMC, and NCMC's counsel requested the court to order their motion be held in abeyance for five months. Brown had shared relevant information, that he had given her, with the opposing counsel, who then manipulated the court into giving them more time to figure out how to prevent that information from reaching the judge which may prevent Summary Judgement.

56. The Plaintiff contends that what Brown did was give NCMC a private session of discovery which allowed them to control and influence the course of the hearings, which gave them an unfair advantage in the case which resulted in their Motion for Summary Judgement being granted. That act by Brown prevented any of the Plaintiff's evidence from reaching the Trial Court record, and prevented any opportunity for the Plaintiff to receive "due process" in the appeals court, the reconsideration & en bonc court, or the Supreme Court, and has cause great injury to the Plaintiff.

57. Based on information and belief, NCMC's counsel instructed Brown to give the Plaintiff only one option, and that option was a mortgage loan modification.

58. Therefore, Attorney Brown committed "Fraud upon the Court" per *Fed. R. Civ. P. 60(b)*, when she withheld pertinent information provided to her by the Plaintiff, and instead supported efforts by NCMC to obtain Summary Judgement.

59. The Plaintiff contends that Brown's actions caused him great injury, and prevented him from acquiring "Due Process" in a court of Law.

## COUNT VII

## PROHIBITED ACTS AND ASSOCIATED FRAUD WITH SUPPORTING STATUTE

A. New Century Mortgage Corporation (NCMC) committed Fraud when they:

1. Inflated the "Fair Market" value of property located at 4932 Nan Linn Dr. to $190,000.00, for financial gain and to make the Plaintiff a "financial hostage" of the property until they recovered from bankruptcy. (Exhibit A) That act was prohibited by the Home Owners Equity Protection Act (HOEPA) per *15 U.S.C. 1639*.

2. Split the "Real Property Value" into two notes, one for $152,000.00, (Note #1 and, another for $38,000.00. That act was prohibited by *15 U.S.C. 1639c(a)2*.

3. Falsified Truth In Lending documents with incorrect Ohio Revise Code reference definition for "High Cost" mortgage interest rates. (Exhibit H) The Plaintiff contends that this act was done to deny him the opportunity to rescind the mortgage before NCMC went into concealment through bankruptcy. That act was prohibited by *15 U.S.C. 1635*.

4. Executed a Note #2 for $38,000.00, with a 30-year interest rate of 10.487% (Exhibit P), when state law says that for mortgage loans for less that $50,000.00, the interest can not be for more than 8.5%. That act was prohibited by *15 U.S.C 1602(aa)*.

5. Assigned Note #1 (the $152,000.00 note) to FARGO as the "Real Property" value for foreclosure, (Exhibit O) when, in fact, they had made the Plaintiff subject to a "Real Property" value of $190,000.00, and caused him to purchase Title Insurance for the proposed $190,000.00 property. (Exhibit R) That act was prohibited by the Fair Debt Collection Practices Act per *15 U.S.C. 1692e*.

6. When they fail to notify the Plaintiff of the assignment of Note #2 (the $38,000.00 note) to FARGO. (Exhibit K) That act was prohibited by *15 U.S.C. 1641(g)*.

Relief for all the above-mentioned infractions is provided for through the Civil

Liability Statute *15 U.S.C. 1640*.

B. Wells Fargo (FARGO) committed the prohibited acts that supported the

fraud of NCMC when they:

    1. Foreclosed only on a Note, and not on "Real Property", as required by state law when they foreclosed on Note #1 (the $152,000.00 note), because they had no "STANDING" to foreclose on the "Real Property" value that they falsely established. That act was prohibited by the "False or misleading representations" statue of *15 U.S.C. 1692e*.

    2. Were still billing the Plaintiff for payments on Note #2 (the $38,000.00 note) while they were in foreclosure for the $152,000.00 note. (Exhibit C) That act was prohibited by the "Unfair Practice" Statute of *15 U.S.C. 1692f.*

    3. Attempting evict the Plaintiff for his residence, while Plaintiff is still the legal owner of Note #2 due to NCMC inflating and falsifying the "Real Property" mortgage value.

C. New Century Liquidating Trust and Carrington Mortgage Loan Trust were complicit in the mortgage fraud when they:

    1. Securitized, as valid assets, and placed Property Note #1 and Property Note #2 on the asset exchange market, as individual assets, when in fact they represented the inflating and falsification of the "Real Property" value of one real estate property.

D. Attorney Joanne Brown assisted in the fraudulent scheme of an enterprise of mortgage companies to use the Judicial Foreclosure process to return the inflated, and falsified mortgage property value back to the "Fair Market" value so that it could legally be sold on the market with a "Free and Clear" Title when she:

    1. Failed to file Plaintiff's answer to the foreclosure complaint.

    2. Failed to file Plaintiff's complaint and counterclaims to the foreclosure complaint.

    3. Failed to file Plaintiff's response to Motion for Summary Judgement.

    4. Falsely stating that she was ill and unable to respond to Magistrates Decision on Summary Judgement.

    5. Falsely misleading the Plaintiff into thinking that her of lack adequately represent his case was due to a COVID-19 like illness.

    6. Provided opposing counsel with relevant facts that Plaintiff had collected on his case, which led to these Defendants aggressively preventing the Plaintiff from responding to their Motion for Summary Judgement, and by causing the Judge to place their Motion for Summary Judgement in obeyance for 5 months, to prevent the Plaintiff from being able to respond to their motion.

7.  She caused great injury to the Plaintiff when she assisted the Defendants in their effort to be granted Summary Judgement, and she with held Plaintiff's information to deny him the opportunity of having a court trial.

Each of the above-mentioned infractions by Attorney acting as an Officer of the Court, represented "Fraud upon the Court" per *Fed. R. Civ. P. 60(B),* and is prohibited by DR 7-101 of the Attorney's ARB Model Code of Professional Responsibility.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully request this honorable court to:

1.  ISSUE a declaratory judgment declaring that each act or practice of which the Plaintiff complain violates those Statutes as provided in Count VII, in the manner set forth in the Complaint.

2.  PROVIDE Injunctive relief prohibiting Defendant FARGO from executing an eviction on property where they have no "STANDING" as described in this Complaint.

3.  ENJOIN Defendant FARGO and Defendant New Century Mortgage as provided for in the "Liability of Assignees" per *15 U.S.C. 1641(d),* and as described in this Complaint.

4.  RELIEF from Judgement in foreclosure proceedings due to lack of notification by FARGO of assignment of Note #2 as required by *15 U.S.C. 1641(g)*

5.  TOLLING Statute of Limitations per *Ohio Revise Code 2305.15(A)* the excessive absconding and concealment of New Century Mortgage Corporation as described in this Complaint.

6.  GRANT Petition for Rehearing per *Fed. R. Civ. P. 60(b),* if more relevant are needed concerning the "Fraud upon the Court" by an Officer of the court withholding pertinent evidence that could have provided the Plaintiff with a due process trial as described in this Complaint.

7.  DEMAND for jury trial.

8.  RESTITUTION, restore the property at 4932 Nan Linn Drive, to the Plaintive based on the fact that he has already paid in full, the $190,000.00 property value that the

Defendant's placed on the property, but have refused to pay the interest because of the fraud as described in this Complaint.

9.  CANCEL all requirement for the interest payment on the subject property in the light of the relevant fraud that has occurred as described in this Complaint.

10. ASSESS, fines and impose civil penalties, and punitive damages pursuant to *15 U.S.C. 1640.*

11. ORDER Defendants to pay all costs.

12. GRANT, such other relief as the Court deems to be just, equitable and appropriate.

Respectfully Submitted,

Virgil H. Collins (Pro Se)
4932 Nan Linn Drive
Richmond Heights, Ohio 44143
Phone: (216) 410-4872
Email: virgilc@netlink.net
Pro Se Plaintiff

**CERTIFICATE OF SERVICE**

A copy of the foregoing Motion was served by regular U.S. Mail postage or email on this day of

January 27, 2023, upon:

Wells Fargo Bank N. A. as Trustee
For Carrington Mortgage Loan Trust
420 Montgomery Street
San Francisco, CA 94104–1207

Carrington Mortgage Loan Trust
1600 S. Douglass Road Suite 110
Anaheim, CA 92806-5951

New Century Mortgage Corporation
18400 Von Karman Suite 1000
Irvine, CA 92612

New Century Liquidating Trust,
Successor-in-interest to New
Century Mortgage Corporation
575 Anton Boulevard
Costa Mesa, CA 92626

Joanne Brown, Esq.
4070 Mayfield Road
Cleveland, Ohio 44121

Virgil H. Collins (Pro Se)
4932 Nan Linn Drive
Richmond Heights, Ohio 44143
Phone: (216) 410-4872
Email: virgilc@netlink.net
Pro Se Plaintiff